FILED

2015 Sep-22  PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM A. SNEAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 2:14-cv-00652-JHE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. | |

## MEMORANDUM OPINION[1]

Plaintiff William A. Snead ("Snead") seeks review, pursuant to 42 U.S.C. §§ 405(g), 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Snead timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 205 (g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Snead was a fifty-four-year-old male at the time of the Administrative Law Judge's ("ALJ") decision on June 8, 2012. (Tr. 30). Snead completed high school and is able to communicate in English.  He previously worked as a van driver, mixer, forklift operator, and an oven dauber. (Tr. 28).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 11).

Snead filed his applications for a period of disability and disability insurance benefits on August 12, 2010. (Tr. 127-30). Snead alleged he was disabled because of bilateral knee pain, low back pain, post-traumatic stress disorder ("PTSD"), and depression/anxiety. (*Id.*). His application was denied by the State Agency, and Snead requested a hearing before an Administrative Law Judge. After a hearing, the ALJ denied disability benefits on June 8, 2012. (Tr. 17-30). On February 5, 2014, the Appeals Council declined to grant review of the ALJ's decision. (Tr. 1-6). On September 18, 2014, Snead filed this action for judicial review. (Doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ

fails to provide the court with sufficient reasoning for determining the proper legal analysis has

been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-

46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of

disability, a claimant must be disabled as defined by the Social Security Act and the Regulations

promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To

establish entitlement to disability benefits, a claimant must provide evidence of a "physical or

mental impairment" which "must result from anatomical, physiological, or psychological

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic

techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is

disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed
          by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national
          economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R.
Parts 400 to 499.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Snead meets the insured status requirements of the Social Security Act through December 31, 2015, and that Snead has not engaged in substantial gainful activity since August 3, 2010, the alleged onset date.[4]  (Tr. 22).  At Step Two, the ALJ found Snead has the following severe impairments: degenerative joint disease of the bilateral knees, post-traumatic stress disorder, and personality disorder with antisocial traits. (*Id.*).  At Step Three, the ALJ determined Snead does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).  Before proceeding to Step Four, the ALJ determined Snead has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except meaning the ability to lift and/or carry 20 pounds occasionally, and 10 pounds frequently; the ability to sit, stand, or walk for 6 hours of an 8 hour workday; Snead is

---

[4] Snead worked after this date, but this work activity did not rise to the level of substantial gainful employment. (Tr. 22).

limited to occasional pushing and pulling in the bilateral lower extremities, can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, frequently balance and occasionally stoop, kneel, crouch or crawl, must avoid all exposure to unprotected heights, avoid concentrated exposure to extreme wetness, extreme cold or extreme heat, and is limited to casual and infrequent contact with the public and coworkers, and limited to occasional interaction with supervisors. (Tr. 25).

At Step Four, the ALJ found that Snead is unable to perform any past relevant work. (Tr. 28). At Step Five, the ALJ determined, based on Snead's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Snead can perform. (Tr. 28). Therefore, the ALJ determined Snead has not been under a disability, as defined by the Social Security Act, and denied Snead's claim. (Tr. 29-30).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Snead failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Snead contends the decision is not supported by substantial evidence because the ALJ failed to properly consider objective evidence of his pain pursuant to SSR 96-7p and the Eleventh Circuit's three-part "pain

standard." (Doc. 14 at 5-11).

Disability benefits may not be paid solely on the basis of a claimant's own self-serving complaints. *See* 42 U.S.C § 423(d)(5)(A). However, subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *see* SSR 96-7p (requiring the ALJ first consider whether there is an underlying medically determinable impairment that could be expected to produce the plaintiff's pain or other symptoms). To establish disability based upon pain and other subjective symptoms, the Eleventh Circuit has set forth a three-part standard: "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

Once a claimant has met the pain standard, the ALJ may still discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so based on substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's

credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted).

When evaluating the credibility of a plaintiff's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ must consider all available subjective and objective evidence.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p.  This may include the nature of a plaintiff's symptoms, the effectiveness of medication, his method of treatment, his activities, and any conflicts between a plaintiff's statements and the rest of the evidence.  20 C.F.R. §§ 404.1529(c)(3) & (4), 416.929(c)(3) & (4).  In articulating reasons for discrediting subjective testimony, an ALJ need not refer to every piece of evidence in the record as long as the decision is not a broad rejection which leaves a district or appellate court unable to conclude that the medical condition was considered as a whole.  *Petteway*, 353 Fed. Appx. at 288.

Here, the ALJ concluded that Snead's medically determinable impairments could be reasonably expected to cause his alleged symptoms; however, he discredited Snead's subjective testimony regarding the intensity, persistence and limiting effects of his pain he claimed rendered him unable to work.

Snead argues there is medical evidence of record demonstrating underlying medical conditions, and that objective medical evidence confirms the severity of his alleged pain satisfying the Eleventh Circuit pain standard.  (*See* doc. 14 at 8).  Snead contends the evidence indicates severe degenerative disc disease, which should have led to a limitation to sedentary exertion and resulted in a finding of disability based on his age, education, and work experience. (*Id*.).  He specifically points to the medical evidence from the Veterans Administration Medical

Center ("VAMC") and the evaluation from Dr. Raveendran Meleth.  (*Id.* at 9-10).

Snead injured his knees while in the service.  (Tr. 215).  His left knee was operated on in 1978, and his right knee was operated on in 1986.  (Tr. at 445).  Snead had some improvement after the surgery, but he reported his pain returned gradually and progressively.  (*Id.*).

The medical evidence demonstrates Snead received treatment at the VAMC in 2009 for a chronic cough.  (Tr. 223).  Although his lungs were clear, X-rays revealed degenerative disc disease of the thoracic spine with mild anterior wedging and osteophyte formation.  (Tr. 223). On May 29, 2009, Snead was treated by Dr. Naila Siddiqui, a psychiatrist, for PTSD, a personality disorder, and anger issues.  (Tr. 251-55).  On October 20, 2009, Snead reported he was in court ordered anger management after domestic assault charges.  (Tr. 336-37).  Snead was working full-time and serving in the reserves.  (Tr. 337).

On March 9, 2010, Snead was seen for a psychiatric follow-up, and apparent (but denied) non-compliance with medication was noted.  (Tr. 323-24).  Snead reported no problems with mood, anxiety, or PTSD.  (Tr. 323).  In May 2010, Snead was noted to have fifty percent service connected disability with twenty percent attributed to limited flexion of the knees, and thirty-percent due to PTSD.  (Tr. 240).  On June 23, 2010, Snead was treated for hypertension, irritable bowel syndrome, bilateral knee pain, and syncope.  (Tr. 288-89).

On September 24, 2010, Snead underwent a psychological evaluation performed by Dr. Cynthia Neville.  (Tr. 440-43).  Snead reported a history of psychological treatment with medical treatment through the VA.  (TR. 440-41).  Dr. Neville diagnosed Snead with "mild to moderate" PTSD with anti-social traits.  (Tr. 443).  Dr. Neville indicated Snead would have a mild impairment in his ability to understand and remember work instructions, a moderate impairment in his ability to interact appropriately with co-workers and supervisors, and a less than moderate

impairment in his ability to handle typical work pressures.  (Tr. 443).

On October 4, 2010, Dr. Raveendran Meleth examined Snead at the request of the Commissioner.  (Tr. 445-48).  Snead had complaints of knee pain.  (Tr. 445).  He reported living at home and helping care for five children.  (*Id.*).   On examination, Snead had a steady gait, could walk on his toes and in tandem, and could squat up to fifty degrees.  (Tr. 446).  Snead exhibited some mild limitations in range of motion of the knees, with no effusion or instability.  (Tr. 447).  Dr. Meleth diagnosed moderately severe osteoarthritis of the bilateral knees.  (Tr. 448).

From July through December 2011, Snead was treated for PTSD due to increased stress, including another domestic assault charge.  (Tr. 508-10, 514-23, 570-84).  On January 25, 2012, Snead was admitted for inpatient treatment to the VAMC for PTSD with homicidal ideation.  (Tr. 496-504).  Snead reported increased stress, including having to relocate due to tornado damage to a home his family rented.  (Tr. 497, 502).  On February 8, 2012, x-rays of Snead's hands revealed mild degenerative changes of the right hand.  (Tr. 473).

On October 20, 2010, A.H. Hughes, a non-medical source, reviewed the medical evidence and completed a Physical Residual Function Capacity Assessment, indicating Snead could perform light and sedentary work.  (Tr. 60-67).  On October 20, 2010, Dr. Melissa Jackson, a state agency psychologist, reviewed the medical evidence and concluded Snead had PTSD and a personality disorder.  (Tr. 450-67).  Dr. Jackson indicated Snead would not be significantly limited in understanding, remembering, and carrying out instructions or making work-related decisions.  (Tr. 465-66).  Dr. Jackson concluded Snead would have moderate social limitations and should only work with casual and infrequent contact with the public and co-workers.  (Tr. 466-67).

Here, the ALJ properly applied the Eleventh Circuit pain standard along with SSR 96-7p, and substantial evidence supports his decision to discredit Snead's subjective testimony of disabling pain. (Tr. 25-28). Here, Snead argues that the medical evidence of record documents underlying medical conditions confirmed by examination and evaluation and points out that physicians have noted known pain indicators suggesting severe pain. (Doc. 14 at 8). This is correct, and the ALJ expressly found that Snead's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, she found Snead's statements[5] concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they are inconsistent with the RFC. (Tr. 25).

Specifically, the ALJ noted, in terms of Snead's alleged knee impairments, the treatment records failed to reveal the type of significant clinical and laboratory abnormalities one would expect if he were disabled. (Tr. 26). She acknowledged evidence that Snead suffers from osteoarthritis in his bilateral knees, but found it to be less than disabling in nature. (*Id.*). She pointed to Snead's lack of treatment for a year prior to seeing his primary care physician in July 2011, his report that Tramadol was helping with some of his arthritis pain in Mary 2012 along with the physician's recommendation to continue with Tramadol and return in six months, and Dr. Meleth's examination notes that indicated less than disabling symptoms and pain. (*Id.*). In

---

[5] Snead testified he is unable to work due to a combination of his physical and mental impairments. (Tr. 38-53). Regarding his physical impairments, Snead stated he has arthritis in his knees, shoulders, and hands and suffers from hypertension. (*Id.*). According to Snead, he can lift and carry only five pounds, sit for ten to fifteen minutes, stand for five to ten minutes, walk less than a quarter of a mile, and engage in no postural activities. (*Id.*). Regarding his mental impairments, Snead testified that he has anger management issues, difficulty with concentration and attention, and is stiff affected by the things he saw while in the military in Iraq and Afghanistan. (*Id.*).

terms of Snead's alleged mental impairments, the ALJ also expressly found the records do not reveal the type of significant clinical and laboratory abnormalities one would expect to find if Snead was disabled.  (*Id.*).  While acknowledging Snead's history of treatment, the ALJ noted his "good mental status exam" in February 2012 and May 2012.  (Tr. 26-27).  The ALJ further relied on Dr. Neville's examination, wherein she stated Snead's mental impairments were mild to moderate and might improve if he were engaged in outpatient psychotherapy coupled with medication management.  (Tr. 27).  The ALJ also expressly relied on Snead's work history and representation that he ceased working because he was laid off, along with the fact that he continues to fulfill his military reserve duties once a month, to discredit his testimony of disabling limitations.  (*Id.*).

Having determined Snead's RFC and that he could not perform the requirements of his past relevant work, the ALJ posed a hypothetical question to the vocational expert assuming an individual with Snead's relevant vocational characteristics and residual functioning capacity. (Tr. 55).  The vocational expert testimony established there were a significant number of jobs that a person with the limitations identified could perform.  Thus, the ALJ concluded Snead was not disabled pursuant to 20 C.F.R. § 404.1520(g).  (Tr. 29).   This finding, along with the ALJ's previous findings, are supported by substantial evidence.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Snead's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 22nd day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE